UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

CAROLYN LEIGH PATTERSON, individually and on behalf of all others similarly situated, and derivatively on behalf of The Ambac Financial Group, Inc. Pension Plan,

Plaintiffs,

-against-

THE AMBAC FINANCIAL GROUP, INC. PENSION PLAN, PLAN ADMINISTRATIVE COMMITTEE of The Ambac Financial Group, Inc. Pension Plan, GREGG L. BIENSTOCK individually and as the Plan Administrator of both The Ambac Financial Group, Inc. Pension Plan and the Ambac Financial Group, Inc. Savings Incentive Plan and as a member of the Plan Administrative Committee of The Ambac Financial Group, Inc. Pension Plan, DIANA ADAMS, ROBERT EISMAN, ANNE GILL KELLY and TIMOTHY STEVENS individually and as members of the Plan Administrative Committee of The Ambac Financial Group, Inc. Pension Plan, PLAN INVESTMENT COMMITTEE of The Ambac Financial Group, Inc. Pension Plan, JOHN DOES NOS. 1-10 individually and/or as members of the Plan Investment Committee of The Ambac Financial Group, Inc. Pension Plan, AMBAC FINANCIAL GROUP, INC. and AMBAC FINANCIAL GROUP, INC. SAVINGS INCENTIVE PLAN,

Defendants.

---------------------------------------------------------------------x

ECF Case

COMPLAINT

08 CV 3582 (DC) (JCF)

## I. PRELIMINARY STATEMENT

1. This is an action by Plaintiff, Carolyn Leigh Patterson, pursuant to the Employee Retirement Income Security Act of 1974, as amended (“ERISA”), 29 U.S.C. § 1001 *et seq.*, for benefits to which she is entitled as a participant in The Ambac Financial Group, Inc. Pension Plan, and, to the extent warranted, on behalf of a class of similarly situated persons and derivatively on behalf of The Ambac Financial Group, Inc. Pension Plan, for appropriate

remedial and equitable relief against the other defendants with respect to, *inter alia*, breaches of fiduciary duty.

## II. JURISDICTION AND VENUE

2. This action is brought pursuant to §§ 502(a)(2) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (a)(3). This Court has subject matter jurisdiction pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). This Court has supplemental jurisdiction over any other claim pursuant to 28 U.S.C. § 1367(a).

3. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 58 of the Federal Rules of Civil Procedure.

4. Venue is based on ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III. PARTIES

5. Plaintiff, Carolyn Leigh Patterson ("Patterson"), is a natural person residing in the state of New York.

6. Defendant The Ambac Financial Group, Inc. Pension Plan (the "Ambac Plan") is an "employee benefit plan" with the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), an "employee pension benefit plan" within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

7. Defendant Plan Administrative Committee of The Ambac Financial Group, Inc. Pension Plan (the "Administrative Committee") has, *inter alia*, "responsibility for the interpretation and construction of the [Ambac] Plan and final authority with respect to the operation and administration of the [Ambac] Plan," Ambac Plan § 12.5(a), and "to determine eligibility for benefits under the Plan[.]" *Id*. § 12(b)(3). As such, at all times pertinent hereto,

the Administrative Committee was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(3)(21)(A).

8. Defendant Gregg L. Bienstock ("Bienstock") is the Administrator of both the Ambac Plan and the Ambac Financial Group, Inc. Savings Incentive Plan within the meaning of ERISA § 3(16)(A)(i), 29 U.S.C.§ 1002(16)(A)(i), and is chairman of the Administrative Committee. As such, at all times pertinent hereto, Bienstock was a fiduciary of both such Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(3)(21)(A).

9. Defendants Diana Adams, Robert Eisman, Anne Gill Kelly and Timothy Stevens are members of the Administrative Committee. As such, at all times pertinent hereto, said defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(3)(21)(A).

10. Defendant Plan Investment Committee of The Ambac Financial Group, Inc. Pension Plan (the "Investment Committee") has, *inter alia*, "the exclusive responsibility and authority to control and manage the assets of the [Ambac] Plan." Ambac Plan § 12.6(a). As such, at all times pertinent hereto, the Investment Committee was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(3)(21)(A).

11. Defendants John Does Nos. 1-10, whose names are currently unknown to Patterson, are members of the Investment Committee and/or such persons who may have used Ambac Plan assets for improper purposes in conjunction with the termination of the Ambac Plan. As such, at all times pertinent hereto, said defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(3)(21)(A).

12. Defendant Ambac Financial Group, Inc. Savings Incentive Plan (the "Savings Plan") is an "employee benefit plan" with the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), an

employee pension benefit plan" within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and a "defined contribution plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

13. Defendant Ambac Financial Group, Inc. ("Ambac") is a Delaware corporation with a principal place of business in New York City. At all times pertinent hereto, Ambac has been the sponsor of both the Ambac Plan and the Savings Plan within the meaning of ERISA § 3(16)(B)(i), 29 U.S.C.§ 1002(16)(B)(i).

## IV. FACTS

14. Patterson was employed by Citibank from September 1978 to May 1989 when her employment was transferred to Ambac, then a wholly owned subsidiary of Citibank. While employed at Citibank, Patterson was a participant in the Citibank Pension Plan (the "Citibank Plan").

15. Upon becoming employed by Ambac, Patterson became a participant in the Ambac Plan. However, while Patterson stopped accruing benefits in the Citibank Plan upon her transfer to Ambac, she remains a participant in the Citibank Plan with a vested right to pension benefits to commence at a future date.

16. Ambac became a publicly traded company in 1991 when Citibank sold 51% of its interest in Ambac. In 1992, Citibank sold its remaining 49% stake in Ambac.

17. Ambac terminated the Ambac Plan effective December 31, 2006.

18. As part of the termination, Ambac amended the Ambac Plan to allow participants to take their benefits as a lump sum.

19. Patterson elected to take her benefits as a lump sum to be rolled over to her Individual Retirement Account ("IRA").

20. The Ambac Plan initially informed Patterson that her lump sum was approximately $880,000. The Ambac Plan subsequently informed Patterson that it had miscalculated her benefit and that her lump sum was actually about $340,000.

21. By letter dated September 14, 2007, Patterson disputed the calculation of her lump sum asserting that she was entitled to a greater benefit. This letter constituted a claim for benefits within the meaning of the Department of Labor's claims procedure regulation, 29 C.F.R. § 2560.501-1.

22. By letter dated October 29, 2007, from Bienstock to Patterson, the Ambac Plan denied the claim.

23. Patterson then retained counsel who, by letter dated November 29, 2007 to the Administrative Committee, informed that Committee that Patterson was appealing the denial of her claim and requested various documents and information, some of which were supplied under cover of letter from Bienstock dated December 21, 2007. Among the documents requested but not provided were those pertaining to the Citibank Plan and the calculation and amount of Patterson's benefit from the Citibank Plan which are pertinent to the calculation of her benefit from the Ambac Plan.

24. It was subsequently agreed between Patterson's counsel and the Ambac Plan's counsel that Patterson's written statement in support of her appeal would be due by January 31, 2008.

25. By letter dated January 30, 2008 to the Administrative Committee, Patterson's counsel set forth the basis for her appeal to the extent the documents and information provided under cover of Bienstock's December 21, 2007 letter permitted.

26. By letter dated February 18, 2008, Patterson's counsel informed the Administrative Committee that they had secured certain documents concerning the Citibank Plan from a source other than defendants and, based on those documents, supplemented the initial appeal letter.

27. By letter dated March 17, 2008, Bienstock informed Patterson and her counsel that the Administrative Committee had determined that "special circumstances" existed requiring an extension of the 60 day time period within which, pursuant to the Department of Labor's claims procedure regulation, appeals are required to be decided.

28. By letter dated March, 18, 2008, Patterson's counsel informed the Administrative Committee that the reasons set forth in Bienstock's March 17, 2008 letter did not constitute "special circumstances" within the meaning of 29 C.F.R. § 2560.503-1(i).

29. Because Patterson's appeal has not been decided within the 60 day limit provided by 29 C.F.R. § 2560.503-1(i), she is deemed to have exhausted the Ambac Plan's administrative remedies. 29 C.F.R. § 2560.503-1(l).

**THE AMBAC PLAN'S TERMS**

30. Ambac Plan Art. 4 governs the calculation of Patterson's benefit. It is undisputed that pursuant to Ambac Plan § 4.2, the post 1991 portion of Patterson's Single Life Annuity is $1625.00 per month. However, the Ambac Plan incorrectly calculated her benefit pursuant to Ambac Plan § 4.3. Also Ambac Plan § 4.1(b) provides an additional benefit for participants who transferred to Ambac from an Affiliate such as Citibank. The Ambac Plan failed to include a calculation pursuant to this section in determining Patterson's benefits.

**a. The Ambac Plan's Calculation of the Pre 1992 Portion of Patterson's Single Life Annuity**

31. Ambac Plan § 4.3 has three components. Section 4.3(a)(1) is 2% of Final Average Compensation as of 12/31/91 multiplied by Credited Service prior to 1/1/92 (not exceeding 30 years) [for Patterson 13.333333 years]. Assuming, without conceding, that the Plan's calculation of Patterson's pre 1992 Final Average Compensation of $10,119.94 per month is correct, this component of the calculation is $2,698.65.

32. Ambac Plan § 4.3(a)(2) is inapplicable because it concerns participants in the Ambac Plan who had greater than 30 years of Credited Service and Patterson did not have in excess of 30 years of Credited Service.

33. Ambac Plan § 4.3(b) imposes a reduction of 1 2/3% of the participant's monthly Social Security Benefit, frozen as of 12/31/91, multiplied by Credited Service prior to 1/1/92. Assuming, without conceding, that the Ambac Plan's calculation of Patterson's Social Security Benefit of $646 per month is correct, this component of the calculation is $143.56.

34. Ambac Plan § 4.3(c) imposes a reduction as follows:

> for each of the Employees described in subsection D.2 of Appendix D of the Plan, such Employee's accrued benefit, if any, at Normal Retirement Age under the "participating plan", as such term is defined in Section 4.1(b) above, applicable to such Employee prior to his employment with an Employer.

35. Purportedly pursuant to Ambac Plan §4.3(c), the Ambac Plan deducted Patterson's Citibank Plan monthly benefit in the amount of $2089.93.

36. This resulted in a monthly benefit for Patterson in the amount of $2,090.16 ($1625 + $2,698.65 - $143.56 - $2,089.93 = $2,090.16). Using the Ambac Plan's lump sum factor of 13.565146, this resulted in a lump sum in the amount of $340,239.91 ($2,090.16 x 12(months) x 13.565146 = $340,239.91).

**b. The Ambac Plan's Calculation of the Pre 1992 Portion of Patterson's Single Life Annuity Was Incorrect**

**1. The Ambac Plan failed to include a calculation pursuant to Ambac Plan § 4.1(b)**

37. Ambac Plan § 4.1(b) states:

> In the case of a Participant who transferred to employment with the Employer from an Affiliate at the time of the transfer, such Participant shall receive, in addition to the benefit under subsection (a), a benefit equal to the difference between--
>
> (1) the Participant's accrued benefit under each participating plan at termination of participation thereunder [May 29, 1989 for Patterson], determined on the basis of his or her Final Average Compensation, Social Security Benefit, and Credited Service, as of the earlier of the Participant's Termination of Service [December 31, 2006 for Patterson] or December 31, 1992 (December 31, 1991 in the case of the Participant's Social Security Benefit); minus
>
> (2) the Participant's accrued benefit under such plan or plans as of the Participant's Termination of Service or December 31, 1992, determined on the basis of credited service with the former employer (for the period after the former employer became an Affiliate).

38. Ambac Plan § 2.3(a) defines "Affiliate" as "any corporation while it is a member of the same controlled group of corporations (within the meaning of Section 414(b) of the [Internal Revenue] Code as [Ambac]." Citibank was an Affiliate of Ambac within the meaning of this definition at the time Patterson transferred her employment from Citibank to Ambac.

39. According to the Ambac Plan, Patterson had 14.33333 years of Credited Service as of December 31, 1992 and her Final Average Compensation was $10,237.99 per month. Accordingly, pursuant to the provisions of the Citibank Plan, the amount to be taken into account under Ambac Plan § 4.1(b)(1) is $2,791.33.

40. Citibank became an Affiliate of Ambac on June 28, 1985 when it acquired Ambac. Thus, for purposes of Ambac Plan § 4.1(b)(2), Patterson had 3.91667 years of credited

service under the Citibank Plan as of December 31, 1992. Patterson's Social Security benefit as of May 29, 1989 was $523.00 per month. Because her benefit from the Citibank Plan as of May 29, 1989 was $2089.93, the compensation used to compute that benefit must have been $9,284.74 per month. Accordingly, the amount to be taken into account under Ambac Plan § 4.1(b)(2) is $693.17. Subtracting the Ambac Plan § 4.1(b)(2) amount from the Ambac Plan § 4.1(b)(1) amount, the result is $2,098.16 ($2,791.33 - $693.17 = $2098.16). Thus, the amount to be added to Patterson's lump sum pursuant to Plan § 4.1(b) is $341,542.16 ($2,098.16 x 12 x 13.565146 = $341,542.16).

**2. The Ambac Plan incorrectly reduced Patterson's Ambac Plan benefit by the amount of her Citibank Plan benefit**

41. As set forth in ¶ 34 above, Ambac Plan § 4.3(c) imposes a reduction as follows:

> for each of the Employees described in subsection D.2 of Appendix D of the Plan, such Employee's accrued benefit, if any, at Normal Retirement Age under the "participating plan", as such term is defined in Section 4.1(b) above, applicable to such Employee prior to his employment with an Employer.

42. "Subsection D.2 of Appendix D of the Ambac Plan" does not describe Patterson. Accordingly, the Plan's use of this provision to reduce Patterson's benefit by the $2,089.93 amount of her monthly benefit from the Citibank Plan was impermissible and no other provision of the Ambac Plan permits such a reduction.

43. In addition, the Summary Plan Description ("SPD ") of the Ambac Plan differs from the Ambac Plan document in that its recitation of the pre 1992 benefit formula does not contain Ambac Plan § 4.3(c) - the reduction for Employees described in subsection D.2 of Appendix D of the Plan. A document titled "Memorandum for File - Claim for Benefits by Carolyn Patterson," provided to Patterson's counsel by the Ambac Plan pursuant to 29 C.F.R. § 2560.503-1(h)(2)(ii), (m)(8), at page 5 confirms this.

44. When a SPD is more favorable to the participant than the plan language, the SPD controls.

45 Thus, the amount to be added to Patterson's lump sum because of the improper deduction of her Citibank Plan benefit is $340,207.35 ($2,089.93 x 12 x 13.565146 = $340,207.35).

### c. The Plan's Calculation of the Social Security Reduction from the pre-1992 Portion of Patterson's Single Life Annuity Violated the SPD

46. Unlike Ambac Plan § 4.3(b) which imposes a reduction of 1 2/3% of the Social Security Benefit, frozen as of 12/31/91, multiplied by Credited Service prior to 1/1/92, the formula in the SPD provides that only a reduction of 1% of the Social Security Benefit times Credited Service to 12/31/91 is to be made. The "Memorandum for File - Claim for Benefits by Carolyn Patterson" at page 5 again confirms this. Because the SPD is more favorable to Patterson, only the 1% formula may be used. Thus, the reduction should have been $86.13 ($646 [monthly Social Security benefit] x 1% x 13.333333 [Patterson's years of Credited Service to 12/31/91] = $86.13). Thus, the Social Security reduction was too high by $57.43 ($143.56 - $86.13 = $57.43). This increases Patterson's lump sum by $9,348.56 ($57.43 x 12 x 13.565146 = $9,348.56).

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Failure to provide documents: ERISA § 502(c)(1), 29 U.S.C § 1032(c)(1), and 29 C.F.R. § 2575.502c-3)

47. Patterson repeats and realleges the matter set forth in ¶¶ 1-46 above as if fully set forth herein.

48. Patterson's counsel's November 29, 2007 letter to the Administrative Committee was also sent to the Administrator of the Ambac Plan and specifically set forth the Plan Administrator's duty to provide documents herein pursuant to ERISA. That letter was received no later than December 4, 2007.

49. Specifically, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), upon written request, the Administrator of a plan is required to provide "instruments under which the plan is established or operated."

50. Bienstock, who is the Administrator of the Ambac Plan, failed, *inter alia*, to provide copies of documents concerning the Citibank Plan despite the fact that the Ambac Plan cannot calculate benefits for former Citibank employees without reference to those documents nor can Ambac Plan participants verify that the Ambac Plan's calculations of their Ambac Plan benefits are correct without reference to those documents.

51. Those documents have yet to be provided.

52. Pursuant to ERISA § 502(c)(1) 29 U.S.C § 1032(c)(1), and 29 C.F.R. § 2575.502c-3, the Court is authorized to impose a penalty on the Administrator of a plan of up to $110 per day for each day (in excess of 30 days from the request) that the Administrator fails to provide the requested documents.

53. There is no reasonable basis for Bienstock's failure to provide the requested documents and he should be penalized $110 for each day since January 3, 2008 (30 days after the December 4, 2007 receipt by Bienstock of the letter requesting the documents) .

**SECOND CLAIM FOR RELIEF**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
**(Benefits under the terms of the plan)**

54. Patterson repeats and realleges the matter set forth in ¶¶ 1-53 above as if fully set forth herein.

55. Pursuant to Ambac Plan § 4.1(b), Patterson is entitled to $341,542.16 plus appropriate interest.

56. Upon information and belief, the Ambac Plan failed to include a benefit pursuant to Ambac Plan § 4.(b) in the calculation of all other Ambac Plan participants who had transferred to Ambac from an Affiliate.

**THIRD CLAIM FOR RELIEF**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
**(Benefits under the terms of the plan)**

57. Patterson repeats and realleges the matter set forth in ¶¶ 1-56 above as if fully set forth herein.

58. Because Ambac Plan § 4.3(c) is inapplicable to Patterson and because the reduction for her Citibank Plan benefit is not included in the SPD, Patterson is entitled to $340,207.35 plus appropriate interest.

59. Upon information and belief, the Ambac Plan impermissibly reduced the benefits of other Ambac Plan participants who were entitled to pension benefits from Citibank or another Affiliate of Ambac.

**FOURTH CLAIM FOR RELIEF**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
**(Benefits under the terms of the plan)**

60. Patterson repeats and realleges the matter set forth in ¶¶ 1-59 above as if fully set forth herein.

61. Because the formula for the Social Security reduction as set forth in the SPD includes a 1% factor rather than the 1 2/3% factor employed by the Ambac Plan in computing Patterson's benefit, Patterson is entitled to $9,348.56 plus appropriate interest.

62. Upon information and belief, Ambac applied the same incorrect Social Security reduction factor in the calculation of the pension of all other Ambac Plan participants.

**FIFTH CLAIM FOR RELIEF**
**ERISA §§ 404(a)(1)(A), (D), 409(a) and 502(a)(2),**
**29 U.S.C. §§ 1104(a)(1)(A), (D), 1109(a) and 1132(a)(2)**
**(Breach of fiduciary duty)**

63. Patterson repeats and realleges the matter set forth in ¶¶ 1-62 above as if fully set forth herein.

64. Defined benefit plans, such as the Ambac Plan, may be terminated in two ways:

1. A "standard termination" pursuant to ERISA § 4041(b), 29 U.S.C. § 1341(b), which requires, *inter alia*, that the plan has sufficient assets to pay its liabilities as of the proposed termination date (ERISA § 4041(b)(2)(A)(i)(III), 29 U.S.C. § 1341(b)(2)(A)(i)(III)); or

2. A "distress termination" pursuant to ERISA § 4041(c), 29 U.S.C. § 1341(c), pursuant to which the plan typically has insufficient assets to meet its liabilities.

65. The Ambac Plan, which, according to its 2005 Annual Report (Form 5500) had a surplus as of December 31, 2005, was terminated as a standard termination.

66. In the event of a plan termination, a plan's assets are first allocated to the payment of benefits. ERISA § 4044(a), 29 U.S.C. § 1344(a). Only after "all liabilities of the plan to participants and their beneficiaries have been satisfied[]" may any "residual assets" be distributed to the plan's sponsoring employer. *Id.* § 4044((d)(1), 29 U.S.C. § 1344(d)(1). Ambac Plan § 10.5 is to the same effect.

67. In their February 18, 2008 letter to the Administrative Committee, Patterson's counsel specifically stated that because

> the information concerning the termination of the [Pension] Plan indicated that surplus assets were to be transferred to the Ambac Financial Group, Inc. Savings Incentive Plan, we demand that no such transfer occur until all of the [Ambac] Plan's liabilities for vested benefits have been paid, including the additional amounts owed to Patterson. Should such a transfer occur, it will constitute a breach of fiduciary duty under ERISA and we will hold the appropriate fiduciaries personally liable. If any such transfer has already occurred, consider this a claim for breach of fiduciary duty under ERISA and a demand that the [Ambac] Plan's fiduciary liability carrier(s) be so notified.

68. Upon information and belief, Ambac Plan assets have been distributed to Ambac and/or the Savings Plan and/or others despite the fact that the Ambac Plan's benefit obligations to Patterson and other Ambac Plan participants have not been satisfied. The Ambac Plan's fiduciaries including the Investment Committee and defendants John Does 1-10 have thus breached their fiduciary duties including, but not limited to, their obligation to

> discharge [their] duties with respect to the plan solely in the interest of the participants and beneficiaries and --
>
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries;
>
> * * *
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

ERISA § 404(a)(1)(A), (D), 29 U.S.C. § 1104(a)(1)(A), (D).

69. Because all Ambac Plan liabilities have not been satisfied, the defendant fiduciaries are personally liable for making the Ambac Plan whole. ERISA § 409(a), 29 U.S.C. § 1109(a).

**SIXTH CLAIM FOR RELIEF**
**ERISA §§ 406(a)(1)(D), 409(a) and 502(a)(2),**
**29 U.S.C. §§ 1106(a)(1)(D), 1109(a) and 1132(a)(2)**
**(Breach of fiduciary duty: Prohibited transaction)**

70. Patterson repeats and realleges the matter set forth in ¶¶ 1-69 above as if fully set forth herein.

71. ERISA § 406(a)(1), 29 U.S.C.§ 1106(a)(1), prohibits a fiduciary to cause a plan to "enter into a transaction if he knows or should know that such transaction constitutes a direct or indirect . . . (D) transfer to or use by or for the benefit of, a party in interest, of any assets of the plan[.]"

72. Ambac is a party in interest. ERISA § 3(14)(C), 29 U.S.C § 1102(14)(C).

73. The distribution of Ambac Plan assets to the Savings Plan had the salutary effect for Ambac of reducing its contributions to the Savings Plan and avoiding the excise tax on an employer's receipt of plan assets. 26 U.S.C. § 4980.

74. Because all Ambac Plan liabilities have not been satisfied, the defendant fiduciaries engaged in a prohibited transaction by distributing assets of the Ambac Plan to the Savings Plan and/or to Ambac and are therefore personally liable for making the Ambac Plan whole. ERISA § 409(a), 29 U.S.C. § 1109(a).

**SEVENTH CLAIM FOR RELIEF**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**(Equitable relief to remedy violations of ERISA and the Ambac Plan)**

75. Patterson repeats and realleges the matter set forth in ¶¶ 1-74 above as if fully set forth herein.

76. Bienstock is the Administrator of the Savings Plan.

77. Upon information and belief, Bienstock and the other members of the Administrative Committee either engaged in breaches of fiduciary duty or knowingly

participated in such breaches with respect to the distribution of Ambac Plan assets to the Savings Plan and/or to Ambac.

78. The Ambac Plan is entitled to equitable restitution from the Savings Plan and/or Ambac of all assets of the Ambac Plan distributed to it/them together with all earnings thereon. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

**EIGHTH CLAIM FOR RELIEF**
**ERISA §§ 404(a)(1)(A), (D), 409(a) and 502(a)(2),**
**29 U.S.C. §§ 1104(a)(1)(A), (D), 1109(a) and 1132(a)(2)**
**(Breach of fiduciary duty)**

79. Patterson repeats and realleges the matter set forth in ¶¶ 1-78 above as if fully set forth herein.

80. Upon information and belief, if (1) the value of participants' Citibank Plan (or other Affiliate Plan) benefits had not been improperly deducted from their pensions, (2) the Ambac Plan § 4.1(b) component had been included in participants' pension calculations and (3) the Ambac Plan had used a 1% factor in the Social Security reduction formula as set forth in the SPD rather than 1 2/3%, the Ambac Plan would have been determined not to have sufficient assets to pay its liabilities as of the proposed termination date and therefore a "standard termination" would have been improper absent the Ambac Plan's fiduciaries enforcing Ambac's contribution requirement pursuant to Ambac Plan § 1.1.

81. The Ambac Plan's fiduciaries' failure to ensure that its benefit liabilities were calculated correctly and to ensure that Ambac contributed sufficient additional funds so that a standard termination was proper breached their duties under ERISA.

82. To the extent the Ambac Plan has insufficient assets to do so, the Ambac Plan's fiduciaries are liable for paying all benefits owed and not yet paid together with interest thereon.

## VI. CLASS ACTION ALLEGATIONS WITH RESPECT TO CLAIMS FOR RELIEF SECOND THROUGH EIGHTH

83. Patterson repeats and realleges the matter set forth in ¶¶ 1-82 above as if fully set forth herein.

84. Patterson brings this action on behalf of herself and, under Fed.R.Civ. P. 23(b)(1), (b)(2) and (b)(3), as the representative of a class of similarly situated persons, defined as all persons who were participants or beneficiaries of the Ambac Plan on the date of its termination and the estates of deceased participants or beneficiaries of the Ambac Plan (the "Class") who have received or will receive lower pension benefits than required because of the Ambac Plan's incorrect calculation of their benefits pursuant to Ambac Plan § 4.3(b) and/or §4.3(c) and/or § 4.1(b). Excluded from the Class are the defendants.

85. The Class is numerous and joinder is impracticable. According to the Ambac Plan's Annual Report (Form 5500), as of December 31, 2005, there are more than 517 participants and beneficiaries of the Ambac Plan. Their exact number and identities are known by the defendants.

86. Patterson's claims are typical of the Class. Patterson and the Class are entitled to seek relief on behalf of the Ambac Plan.

87. Patterson will fairly and adequately protect and represent the interests of the Class. The interests of Patterson are coincidental with, and not antagonistic to those of the Class. Patterson is represented by counsel who are experienced and competent in the prosecution of complex class action litigation and ERISA litigation.

88. Questions of law and fact common to the Class or to certain subclasses include, but are not limited to:

a. Did the Ambac Plan incorrectly calculate the pension benefits of members of the Class by using too high a Social Security reduction factor?

b. Did the Ambac Plan incorrectly calculate the pension benefits of members of the Class by failing to include an Ambac Plan § 4.1(b) calculation?

c. Did the Ambac Plan incorrectly calculate the pension benefits of members of the Class by deducting their pension benefits from an Affiliate pension plan?

d. Did the Ambac Plan's fiduciaries breach their duties to the members of the Class by transferring Ambac Plan assets to the Savings Plan and/or to Ambac and/or to others prior to the Ambac Plan having satisfied its obligation to pay benefits to the members of the Class?

e. Did the Ambac Plan's fiduciaries engage in a prohibited transaction by transferring Ambac Plan assets to the Savings Plan and/or to Ambac prior to the Ambac Plan having satisfied its obligation to pay benefits to the members of the Class?

f. Is Bienstock and/or the Savings Plan liable for equitable restitution to repay to the Ambac Plan all assets of the Ambac Plan that were transferred to the Savings Plan with earnings thereon?

89. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

90. Adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

91 Defendants have acted or refused to act on grounds generally applicable to the Class making final injunctive and corresponding declaratory relief appropriate for the Class as a whole.

92. Questions of law or fact common to Class members predominate over questions affecting only individual members making a class action superior to other methods for fairly and efficiently adjudicating the controversy.

## VII PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of herself, the Class and The Ambac Financial Group, Inc. Pension Plan, prays for judgment as follows:

a. Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and that plaintiff is a proper representative of the Class;

b. Ordering defendants to recalculate the Ambac Plan pension benefits of Patterson and the members of the Class as required in order that they receive their benefits in accordance with the terms of the Ambac Plan;

c. Ordering defendants to pay pension benefits to Patterson and the members of the Class as recalculated pursuant to paragraph (b) above together with appropriate interest on any retroactive or lump sum payments ;

d. Ordering the defendant fiduciaries, jointly and severally, to make the Ambac Plan whole for any losses, including lost earnings, resulting from the transfer of assets from the Ambac Plan to the Savings Plan and/or to Ambac and/or to others;

e. Ordering the defendant fiduciaries, jointly and severally, to make the Ambac Plan whole for any underfunding caused by their breach of fiduciary duty in permitting Ambac to terminate the Ambac Plan pursuant to a standard termination despite the Ambac Plan having been insufficiently funded for such a termination;

f. Ordering Bienstock and the Savings Plan to restore to the Ambac Plan all amounts received directly or indirectly from the Ambac Plan, together with interest thereon;

g. Enjoining all defendants and those acting in concert with them from using Ambac Plan assets for any purpose other than providing benefits to the participants and beneficiaries of the Ambac Plan or defraying the reasonable expenses of administration of the Ambac Plan until

all benefits owed by the Ambac Plan together with appropriate interest thereon have either been paid or annuities have been purchased for them;

h. Preliminarily and during the pendency of this litigation, ordering an asset freeze of defendants Ambac and the Savings Plan until such time as they post a bond sufficient to assure that all monies received directly or indirectly from the Ambac Plan, together with interest and earnings thereon can be returned to the Ambac Plan upon the conclusion of this litigation;

i. Preliminarily and/or permanently removing the defendant fiduciaries of the Ambac Plan and appointing an independent successor fiduciary to assume all authority for the management and control of the assets of the Ambac Plan;

j. Ordering Bienstock to provide to Patterson all documents and information previously requested by her counsel and heretofore not provided and ordering Bienstock to pay Patterson $110 per day for each day since December 4, 2007 that he has not provided those documents and information;

k. Awarding Patterson and the Class their costs and expenses in this litigation and reasonable attorneys fees pursuant to the common fund theory or 29 U.S.C. § 1132(g)(1);

l. Awarding Patterson and the Class such other and further relief as to this Court may seem just and proper.

Dated: New York, NY
April 14, 2008

Rosen Preminger & Bloom LLP
Attorneys for Plaintiffs

By: /s/ *David S. Preminger*
David S. Preminger (DP 1057)
708 Third Avenue, Suite 1600
New York, NY 10017
(212) 683-1900
dpreminger@rpblawny.com